UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH AARON MCKISSICK,<br><br>Plaintiff,<br><br>v.<br><br>JOSIE GASTELO et al.<br><br>Defendants. | Case No. 2:21-cv-01945-VAP (MAA)<br><br>**MEMORANDUM DECISION AND ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND** |

## I.  INTRODUCTION

On March 1, 2021, Plaintiff Joseph Aaron McKissick ("Plaintiff"), a California inmate housed at California Men's Colony State Prison ("CMC"), proceeding *pro se*, filed a Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"). (Compl., ECF No. 1.) On March 4, 2021, the Court granted Plaintiff's Request to Proceed Without Prepayment of Filing Fees. (ECF Nos. 2, 5.)

Pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, on April 13, 2021, the Court screened and dismissed the Complaint with leave to amend. (Order Dismiss. Compl., ECF No. 8.) On April 19, 2021, Plaintiff filed a First Amended Complaint ("FAC," ECF No. 9), which the Court screened and dismissed with

leave to amend on May 7, 2021 (Order Dismiss. FAC, ECF No. 10). On May 28, 2021, Plaintiff filed a Second Amended Complaint ("SAC"). (SAC, ECF No. 11.)

The Court has screened the SAC, and dismisses it with leave to amend for the reasons stated below. No later than August 9, 2021, Plaintiff must either: (1) file a Third Amended Complaint; or (2) advise the Court that Plaintiff no longer intends to pursue this lawsuit.

## II. PLAINTIFF'S ALLEGATIONS AND CLAIMS[1]

The SAC is filed against: (1) Josie Gastelo, former head warden of CMC; (2) Garcia, Correctional Counselor; (3) Sandavol, CMC-West-5 yard sergeant; and (4) Urbina, correctional officer in the dorm where Plaintiff is housed (each, a "Defendant," and collectively, "Defendants"). (SAC 3–4.)[2]

Plaintiff alleges that Defendants violated the Eighth Amendment by deliberate indifference to Plaintiff's health and safety during the outbreak of COVID-19 at CMC. (*Id*. at 5.) Defendants knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. (*Id*.)

The following memoranda were sent to Defendants regarding COVID-19: (1) a March 13, 2020 memorandum sent to CDCR staff regarding COVID-19 (*id*. at 5, 11–12); (2) an April 1, 2020 memorandum sent to CDCR staff stating that in order to reduce the spread of COVID-19 and avoid the dangerous consequences of transmission, CDCR will accelerate the release of certain nonviolent inmates who

---

[1] The Court summarizes Plaintiff's allegations and claims in the SAC and attached exhibits, without opining on their veracity or making any findings of fact. *See Durning v. First Boston Corp*., 815 F.2d 1265, 1267 (9th Cir. 1987) (explaining that documents attached to a complaint are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim).

[2] Citations to pages in docketed documents reference those generated by CM/ECF.

2

are within sixty days of release and some inmates receiving hospice care (*id.* at 5, 14); (3) an April 8, 2020 memorandum sent to Associate Directors and Wardens (including Defendant Gastelo) directing them to protect the health of staff and inmates and providing guidance on cleaning and disinfection protocols as recommended by the Center for Disease Control (*id.* at 5, 16); (4) a May 11, 2020 memorandum sent to Associate Directors and Wardens (including Defendant Gastelo) on how to mitigate exposure of staff and inmates to COVID-19 (*id.* at 5, 18); (5) a November 19, 2020 memorandum sent to CDCR staff to wear masks to reduce the spread of COVID-19 (*id.* at 5, 20–22); and (6) a December 21, 2020 memorandum sent to CDCR staff due to the failure of mandatory employee COVID-19 testing, non-compliance, and accountability, and stating that all supervisors are responsible for their subordinates (*id.* at 5–6, 25–27).

A review of disciplinary actions showed that twelve CMC employees received verbal counseling for violating COVID-19 protocols. (*Id.* at 6, 29.) Three pictures show that the CMC dorms are not in compliance with the six-feet social distancing protocol. (*Id.* at 6, 31–34.)

On August 8, 2020, Plaintiff filed a 602 complaint regarding the staff's failure to comply with COVID-19 safety protocols and due to Plaintiff's fear for his life due to widespread COVID-19 at CMC. (*Id.* at 6, 35–43.) In his 602 complaint, Plaintiff requested to go through the accelerated release program to transfer to transitional housing, ankle monitoring, or "MCRP." (*Id.* at 40.)

Defendant Gastelo ordered all programs to stop, ordered all staff and inmates to wear a mask, and implemented a policy of six-feet social distancing and living in the dorms. (*Id.* at 6.) Correctional officers refused to wear masks, but ordered inmates to wear them. (*Id.*) Defendant Gastelo ordered correctional counselors to minimize the inmate population in dorms by releasing inmates "with one year or less." (*Id.* at 6–7.)

///

3

Defendants Sandavol and Urbino failed to implement the six-feet social and living distance in the dorms. (*Id*. at 7.) An outbreak of COVID-19 occurred in the F-yard in the west facility. (*Id*.) These inmates were moved to E-yard, where Plaintiff was housed. (*Id*.)

In fear of his life, Plaintiff called his mother, Lisa McKissick. (*Id*.) Ms. McKissick called Defendant Gastelo and discussed her concern for Plaintiff's health and safety and asked if Plaintiff could be released to an ankle monitoring program. (*Id*.) Defendant Gastelo told Ms. McKissick to have Plaintiff contact his counselor. (*Id*.)

Plaintiff contacted Defendant Garcia "via open line" and asked Defendant Garcia if Plaintiff could be transferred to an ankle monitoring program. (*Id*.) Defendant Garcia replied that he could, but he did not have time. (*Id*.) Defendant Garcia failed to take Plaintiff to classification "to prevent the Plaintiff detect of COVID-19 for secured housing." (*Id*. at 3.)

On January 2, 2021, Plaintiff tested positive for COVID-19 and was transferred to F-yard in the West Facility in a dorm with other inmates not in isolation. (*Id*. at 7.) Plaintiff remained in the dorm for three weeks. (*Id*.)

Medical staff told Plaintiff that it was best for every inmate to test positive so COVID-19 among inmates could be resolved for up to ninety days. (*Id*.) COVID-19 was intentionally inflicted upon the inmate population by the staff or subordinates of Defendant. (*Id*.)

Plaintiff was transferred back to E-yard. (*Id*.) Defendant Sandavol did not ensure that Defendant Urbino implemented the six-feet social and dorm living conditions, because Plaintiff had a "bunky" that slept under him with the two bunks on his left and right side less than three feet away from him. (*Id*. at 7–8.) Defendant Sandavol failed to provide the needed cleaning supplies to disinfect the dorm living area, restroom, shower, or dayrooms. (*Id*. at 8.) Defendant Urbino did not make an effort to get the needed supplies to reduce the risk of exposure to

COVID-19. (*Id*.) Defendants failed to supervise their subordinates to help reduce the risk of Plaintiff being harmed by the spread of COVID-19. (*Id*.) Each of the named Defendants failed to follow the orders in the memoranda, for which Plaintiff is still suffering. (*Id*.) Plaintiff lost his ability to taste and smell, and is still suffering headaches and psychological damage. (*Id*. at 5, 8.)

Plaintiff seeks declaratory relief and damages. (*Id*. at 9.)

### III. LEGAL STANDARD

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity (28 U.S.C. § 1915A), or in which a plaintiff proceeds *in forma pauperis* (28 U.S.C. § 1915(e)(2)(B)). The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is: (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") standard. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § 1915A); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § 1915(e)(2)(B)(ii)). To survive a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although "detailed factual allegations" are not required, "an

unadorned, the-defendant-unlawfully-harmed-me accusation"; "labels and conclusions"; "naked assertion[s] devoid of further factual enhancement"; and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not suffice. *Id*. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

In reviewing a Rule 12(b)(6) motion to dismiss, courts will accept factual allegations as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). Moreover, where a plaintiff is appearing *pro se*, particularly in civil rights cases, courts construe pleadings liberally and afford the plaintiff any benefit of the doubt. *Wilhelm*, 680 F.3d at 1121. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). However, the liberal pleading standard "applies only to a plaintiff's factual allegations." *Neitzke v. Williams,* 490 U.S. 319, 330 n.9 (1989), *superseded by statute on other grounds*, 28 U.S.C. § 1915. Courts will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.,* 349 F.3d 1191, 1200 (9th Cir. 2003). In giving liberal interpretations to complaints, courts "may not supply essential elements of the claim that were not initially pled." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

///

///

///

## IV. DISCUSSION

### A. Section 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). "The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Plaintiff asserts claims for violation of the Eighth Amendment's protection against cruel and unusual punishment.

### B. Eighth Amendment Cruel and Unusual Punishment

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," which prohibits cruel and unusual punishments. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). "[W]hile conditions of confinement may be, and often are, restrictive and harsh, they 'must not involve the wanton and unnecessary infliction of pain.'" *Morgan v. Morgensen*, 465 F.3d

1041, 1045 (9th Cir. 2006) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "In other words, they must not be devoid of legitimate penological purpose, or contrary to evolving standards of decency that mark the progress of a maturing society." *Id.* (citations and quotation marks omitted).

"An Eighth Amendment claim that a prison official has deprived inmates of humane conditions must meet two requirements, one objective and one subjective." *Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (quoting *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1995)). <u>First</u>, to satisfy the Eighth Amendment's objective prong, "the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotation marks and citations omitted). For a claim "based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*.

<u>Second</u>, to satisfy the Eighth Amendment's subjective prong, there must be allegations that a prison official acted with "deliberate indifference" to an inmate's health or safety—that is, "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A prison official's duty under the Eighth Amendment is to ensure reasonable safety," and "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id*. at 844–45 (internal quotation marks and citations omitted). Thus, there is no Eighth Amendment violation if a prison official "did not know of the underlying facts indicating a sufficiently substantial danger and [was] therefore unaware of a danger," or if "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844. "In addition, prison officials who actually knew of a

substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. "Neither accident nor negligence constitutes cruel and unusual punishment, as '[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.'" *Blackwell v. Covello*, No. 2:20-cv-1755 DB P, 2021 U.S. Dist. LEXIS 45226, at *6 (E.D. Cal. Mar. 9, 2021) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Furthermore, in analyzing whether prison officials have violated the Eighth Amendment, courts must give "due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Farmer*, 511 U.S. at 845 (quoting *Spain v. Procunier*, 600 F.2d 189, 193 (9th Cir. 1979)).

### 1. COVID-19

"The COVID-19 pandemic is 'unprecedented,' and no one questions that it poses a substantial risk of serious harm to [prisoners]." *Plata v. Newsom*, 445 F. Supp. 3d 557, 559 (N.D. Cal. 2020) (citation omitted); *see also Williams v. Dirkse*, No. 1:21-cv-00047-BAM (PC), 2021 U.S. Dist. LEXIS 103673, at *22–23 (E.D. Cal. June 2, 2021) ("The transmissibility of the COVID-19 virus in conjunction with [the prisoner plaintiff's] living conditions are sufficient to satisfy that 'conditions put the plaintiff at substantial risk of suffering serious harm.'").

However, to state a cognizable Eighth Amendment claim, Plaintiff must provide more than generalized allegations that Defendants have not done enough to enforce six-feet social and living distancing, or provided sufficient cleaning supplies, in order to control the spread of COVID-19. *See, e.g., Sanford v. Eaton*, No. 1:20-cv-00792-BAM (PC), 2021 U.S. Dist. LEXIS 59949, at *15 (E.D. Cal. Mar. 29, 2021) (explaining that "in order to state a cognizable Eighth Amendment claim against the warden, associate wardens and the other defendants named,

Plaintiff must provide more than generalized allegations that the warden, associate wardens and other defendants have not done enough regarding overcrowding to control the spread" of COVID-19); *Blackwell*, 2021 U.S. Dist. LEXIS 45226, at *8 (concluding that "in order to state a cognizable Eighth Amendment claim against the warden plaintiff must provide more than generalized allegations that the warden has not done enough to control the spread" of COVID-19). Plaintiff fails to allege facts showing how each Defendant specifically was responsible for such failings, or allege a causal link between each Defendant and the claimed constitutional violation. *See, e.g., Cedillos v. Youngblood*, No. 1:21-cv-00138-DAD-BAM (PC), 2021 U.S. Dist. LEXIS 115477, at *6–8 (E.D. Cal. June 21, 2021) (concluding that prisoner failed to state Section 1983 claims due to allegations of "failings in social distancing and unclean cells and showers" during COVID-19 pandemic, where plaintiff failed to allege causal link between defendants and violations); *Stephen v. Tilestone*, No. 2:20-cv-1841 KJN P, 2021 U.S. Dist. LEXIS 16584, at *15–16 (E.D. Cal. Jan. 28, 2021) (concluding that plaintiff failed to allege Eighth Amendment violation for prison transfer that purportedly put him at extreme risk of contracting COVID-19 because he did not allege facts showing how any particular defendant violated his rights). Indeed, the SAC frequently clumps "Defendants" together, without detailing any specific action of each Defendant. (*See generally* SAC.)

Furthermore, the SAC includes generalized allegations regarding unnamed individuals, including that: (1) correctional officers refused to wear masks (SAC 6); (2) unnamed "medical staff" told Plaintiff that it was best for every inmate to test positive so COVID-19 among inmates could be resolved for up to 90 days (*id*. at 7); and (3) COVID-19 was intentionally inflicted upon the inmate population (*id*.). These general allegations, however, are not tied to any named Defendant. *See Cedillos*, 2021 U.S. Dist. LEXIS 115477, at *5–6 ("Plaintiff attributes all COVID issues to the 'administration,' or the medical chief or officers or nurses, but does not state what each person did or did not do which violated his constitutional rights.

Plaintiff must name each person he believes violated his constitutional rights."). Furthermore, the allegation that COVID-19 was intentionally inflicted upon inmates is too speculative to state a claim for relief. *See Twombly*, 550 U.S. at 555 (requiring sufficient factual allegations that "raise a right to relief above the speculative level").

The SAC also alleges that Defendants failed to supervise their subordinates to help reduce the risk of Plaintiff being harmed by the spread of COVID-19. (SAC 8.) However, liability under Section 1983 cannot be established solely on a theory of *respondeat superior* based on the unconstitutional conduct of subordinates. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for municipalities under Section 1983). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1998). The requisite causal connection can be established when a person (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)). "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the
///

11

rights of others.'" *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (alteration in original) (quoting *Starr*, 652 F.3d at 1208).

Here, the SAC does not contain any specific factual details regarding Defendants Garcia, Sandavol, and Urbina and their actions in relation to their subordinates. With respect to Defendant Gastelo, the SAC alleges that Defendant Gastelo ordered all programs to stop, ordered all staff and inmates to wear a mask, implemented a policy of six-feet social distancing and living in the dorms, and ordered correctional counselors to minimize the inmate population in dorms by releasing inmates with "one year or less." (SAC 6–7.) The SAC also alleges that disciplinary action records show that twelve CMC employees received verbal counseling for violating COVID-19 protocols. (*Id.* at 6, 29.) The SAC does not allege any Defendant's direct participation in a constitutional violation, acquiescence in the constitutional deprivation, or a reckless or callous indifference to the rights of others. *See Keates*, 883 F.3d at 1243. Indeed, the factual allegations in the SAC support the opposite inference. Thus, the SAC does not state a claim for supervisory liability against any Defendant.

The Court is not discounting Plaintiff's concerns regarding—and his contraction of—COVID-19. However, the SAC does not contain sufficient allegations to state an Eighth Amendment claim against any of the named Defendants. The Court previously advised Plaintiff of the shortcomings of this claim. (*See generaly* Order Dismiss. Compl.; Order Dismiss. FAC.) If Plaintiff files an amended complaint with this claim, he must correct these deficiencies or risk its dismissal.

### 2. Classification and Release to Ankle Monitoring Program

Plaintiff alleges that his mother spoke with Defendant Gastelo and asked if Plaintiff could be released to an ankle monitoring program. (SAC 7.) Plaintiff also alleges that he spoke with Defendant Garcia and asked to be released to an ankle

monitoring program, and that Defendant Garcia failed to take Plaintiff to classification. (*Id*. at 3, 7.) Plaintiff submitted a 602 complaint asking to go through the accelerated release program to be transferred to transitional housing or to an ankle monitoring program. (*Id*. at 40.)

These allegation fail to state an Eighth Amendment claim because prisoners have no constitutional right to a particular classification status. *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987). Prisoners have no liberty interest in their classification status or eligibility for rehabilitative programs. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). "Because the mere act of classification 'does not amount to an infliction of pain,' it 'is not condemned by the Eighth Amendment.'" *Myron v. Terhune*, 476 F.3d 716, 719 (9th Cir. 2007) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1251 (9th Cir. 1982)).

Furthermore, to the extent Plaintiff seeks accelerated release to an ankle monitoring program, he cannot do so through a Section 1983 civil rights lawsuit. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

For these reasons, Plaintiff fails to state an Eighth Amendment cruel and unusual punishments claim related to his classification and accelerated release to an ankle monitoring program. If Plaintiff files an amended complaint with these claims, they will be subject to dismissal.

V. **CONCLUSION**

For the reasons stated above, the Court **DISMISSES** the SAC **WITH LEAVE TO AMEND**. Plaintiff may have another opportunity to amend his complaint in light of his *pro se* prisoner status. Plaintiff is **ORDERED** to, no later

13

than August 9, 2021, either: (1) file a Third Amended Complaint ("TAC"), or (2) advise the Court that Plaintiff no longer intends to pursue this lawsuit.

The TAC must cure the pleading defects discussed above and shall be complete in itself without reference to the FAC. *See* L.R. 15-2 ("Every amended pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits. The amended pleading shall not refer to the prior, superseding pleading."). This means that Plaintiff must allege and plead any viable claims in the TAC again. Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the SAC.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims. Plaintiff is advised that pursuant to Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.** In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims. Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details. It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation. Plaintiff is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court cautions Plaintiff that failure to timely file a TAC will result in a recommendation that this action be dismissed for failure to prosecute and/or failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Plaintiff is not required to file an amended complaint, especially since a complaint dismissed for failure to state a claim without leave to amend may count

///

as a "strike" for purposes of the *in forma pauperis* statute, 28 U.S.C. § 1915(g).[3] Instead, Plaintiff voluntarily may dismiss this action pursuant to Federal Rule of Civil Procedure 41(a) using the attached Notice of Voluntary Dismissal form.

Plaintiff is advised that the undersigned Magistrate Judge's determination herein that the allegations in the SAC are insufficient to state a particular claim should not be seen as dispositive of the claim. Accordingly, although the undersigned Magistrate Judge believes Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim for relief that is plausible on its face, Plaintiff is not required to omit any claim or Defendant in order to pursue this action. However, if Plaintiff decides to pursue a claim in an amended complaint that the undersigned Magistrate Judge previously found to be insufficient, then, pursuant to 28 U.S.C. § 636, the undersigned Magistrate Judge ultimately may submit to the assigned District Judge a recommendation that such claim may be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file objections. *See* Fed. R. Civ. P. 72(b); C.D. Cal. L.R. 72-3.

IT IS SO ORDERED.

DATED: July 9, 2021

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE

Attachments

Form Civil Rights Complaint (CV-66)

Form Notice of Dismissal

---

[3] Inmates who have accumulated three of more "strikes" are not permitted to bring a civil lawsuit or appeal a judgment in a civil action *in forma pauperis*—that is, without prepayment of the filing fee—unless the inmate is under imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g). Instead, inmates with three or more "strikes" generally must pay their full filing fee upfront in order to file a civil lawsuit or appeal a civil judgment.

15